IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**MAZHAR FAREED and AMMAR RAZA,**

                    **Plaintiffs,**

v.

**UNITED STATES DEPARTMENT OF HOMELAND SECURITY, et al.,**

                    **Defendants.**

Case No. 23-2006-DDC-BGS

## MEMORANDUM AND ORDER

This is a case about standing. Here, the court evaluates plaintiffs' standing to challenge delays in the immigrant visa application process. Plaintiffs, a father and son, allege that defendants unreasonably have delayed adjudication of the son's immigrant visa application. The son—plaintiff Ammar Raza—is a citizen of Pakistan and is eligible for a family-based immigrant visa under the Immigration and Nationality Act (INA). Plaintiff Raza's father—plaintiff Mazhar Fareed—is "an alien lawfully admitted for permanent residence." INA § 203(a)(2)(A), 8 U.S.C. § 1153(a)(2)(A). Under the INA, plaintiff Fareed's status as such an alien qualifies his unmarried children—including plaintiff Raza—for family-based immigration visas. *Id.* Plaintiffs ask the court to compel agency action—scheduling plaintiff Raza's visa interview and adjudication of his application—under either the Administrative Procedures Act (APA) or by issuing a writ of mandamus. To that end, plaintiffs bring suit against seven defendants: the United States Department of Homeland Security (DHS); Alejandro Mayorkas, as Secretary of the DHS; the United States Citizenship and Immigration Services (USCIS); and

1

Ur Jaddou, as Director of USCIS (collectively, the "DHS defendants"); the United States Department of State; and Antony Blinken, as Secretary of State (collectively, the "State Department defendants"); as well as Merrick Garland, Attorney General of the United States.

Defendants filed two Motions to Dismiss (Doc. 13; Doc. 18). The first seeks dismissal under both Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6). Under Rule 12(b)(1), the motion challenges plaintiffs' standing to sue five defendants—the DHS defendants and Garland. After full briefing on the motion, both parties agree that the court should dismiss these five defendants because the plaintiffs fairly cannot trace their alleged injuries to the DHS defendants or Garland. That is, none of these five defendants possess the authority to schedule plaintiff Raza's interview or adjudicate his application, or even accelerate that process. And so, plaintiffs cannot trace any injury resulting from delay in the interview and adjudication process to these defendants. The court thus dismisses the DHS defendants and General Garland, granting defendants' first Motion to Dismiss (Doc. 13) in part.

The first motion also seeks dismissal for failure to state a claim under Rule 12(b)(6). Plaintiffs fail to state a claim, the motion contends, because plaintiffs first must prove an agency has a mandatory duty to act before challenging an unreasonable delay in agency action, whether under the APA or by a writ of mandamus. The motion argues that defendants here didn't owe a mandatory duty to schedule plaintiff Raza's visa interview or adjudicate his visa application because these actions are subject to agency discretion. Nor, defendants assert, was the purported delay unreasonable. The court doesn't reach these Rule 12(b)(6) arguments in light of its ruling on the 12(b)(1) portion of the first Motion to Dismiss (Doc. 13), discussed above, and its ruling on the Second Motion to Dismiss (Doc. 18), described below.

Defendants then filed a Second Motion to Dismiss (Doc. 18). It responds to a change in the "current" status of plaintiff Raza's visa application. The second motion seeks to dismiss all defendants for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and 12(h)(3)—or, alternatively, summary judgment under Rule 56. The motion argues that plaintiffs—given plaintiff Raza's new visa status—lack standing to sue any of the defendants. Plaintiff Raza's visa status changed because the State Department defendants implemented a new cut-off date, in response to Congressionally mandated limitations, for his immigration category. The newly established cut-off date, effective in August 2023, knocks plaintiff Raza's visa application out of the "current" status. Now, plaintiff Raza cannot secure a visa until that cut-off date again shifts forward. So, even if the court were to compel the State Department to schedule an interview and adjudicate his application, plaintiff Raza currently cannot receive a visa. Without any avenue to secure a successful visa application, the court cannot redress plaintiffs' injuries. And without redressability, the plaintiffs lack standing. The court thus dismisses all remaining defendants under Rule 12(b)(1) because they lack standing to sue. This conclusion precludes subject matter jurisdiction.

The court thus grants defendants' first Motion to Dismiss (Doc. 13) in part, dismissing five defendants for plaintiffs' lack of standing because those defendants already have fulfilled their role, or have no role in the visa application process. That is, plaintiffs' standing fails for these five defendants on the causation prong of the standing doctrine. The court also grants defendants' Second Motion to Dismiss (Doc. 18), dismissing the remaining defendants because plaintiffs' lack of standing under the redressability prong. Given these justiciability issues, the court lacks subject matter jurisdiction and dismisses the case. The court needn't reach, therefore, the parties' Rule 12(b)(6) unreasonable delay arguments.

The court explains these decisions in the following sequence. First, the court recites the relevant background facts in Part I. Then, in Part II, the court addresses the legal standard for a Rule 12(b)(1) motion asserting lack of subject matter jurisdiction. Next, the court evaluates the three elements of standing to sue the seven defendants in Part III before concluding in Part IV.

**I.      Background**

The following facts come from plaintiffs' Complaint (Doc. 2) and, where necessary in light of changed circumstances, from plaintiffs' Briefs in Opposition to Defendants' Motions to Dismiss (Doc. 15; Doc. 21). The court concludes below—in Part II—that the 12(b)(1) motions here are facial attacks. Given this determination, the court accepts plaintiffs' facts as true and views them in the light most favorable to plaintiffs, the party opposing the motions. *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001) (explaining that under a 12(b)(1) facial attack "the district court must accept the complaint allegations as true"); *Doe v. Sch. Dist. No. 1*, 970 F.3d 1300, 1304 (10th Cir. 2020) (explaining that on a motion to dismiss the court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to" the party opposing the motion (citation and internal quotation marks omitted)).

*Plaintiffs' Need for an Immigrant Visa*

Plaintiff Mazhar Fareed is a lawful permanent resident of the United States who resides in Overland Park, Kansas. Doc. 2 at 3 (Compl. ¶ 1). Plaintiff Fareed is in poor health and needs family support to attend doctor's appointments and communicate with both his medical providers and the world around him. *Id.* at 6 (Compl. ¶ 17); Doc. 21 at 5. Plaintiff Fareed has one son in the United States, but that son is unable to meet all of plaintiff Fareed's needs. Doc. 21 at 5. So, plaintiff Fareed hoped another son—plaintiff Ammar Raza, who currently resides in Islamabad, Pakistan—could join him in the United States. Doc. 2 at 6 (Compl. ¶ 15). To that end, plaintiff

Fareed initiated plaintiff Raza's visa application under the INA procedure allowing a lawful permanent resident to petition for an alien family member's immigration to the United States. Doc. 21 at 2–3.

### *Plaintiff Raza's Visa Eligibility*

Plaintiff Raza qualifies under the INA as an unmarried child "of an alien lawfully admitted for permanent residence" in the F2A eligibility category. Doc. 2 at 7 (Compl. ¶ 21); INA § 203(a)(2)(A), 8 U.S.C. § 1153(a)(2)(A). Congress limits by statute the number of visas issued for the F2A category, or any given eligibility category, each year. Doc. 21 at 2. Title 8 of the United States Code § 1151(a)–(c) prescribes the total number of available family-sponsored immigration visas annually. *Id.* And 8 U.S.C. § 1153(a) further limits the available number of immigrant visas according to family member type. *Id.*

### *Plaintiff Raza's Visa Application Process*

Plaintiff Fareed filed a Petition for Alien Relative (Form I-130) as an immigrant visa petitioner on plaintiff Raza's behalf. Doc. 2 at 6 (Compl. ¶¶ 16, 18). USCIS approved plaintiff Fareed's petition on August 24, 2020. *Id.* (Compl. ¶ 18). Then, plaintiffs filed an Application for Immigrant Visa and Alien registration (Form DS260) on plaintiff Raza's behalf in September 2020. *Id.* (Compl. ¶ 19). Plaintiff Raza received notice from the State Department's National Visa Center (NVC) on April 7, 2021, that his case was "documentarily qualified," which means he is "in line for the next available interview appointment." *Id.* at 6–7 (Compl. ¶ 20). The wait between becoming "documentarily qualified" and receiving a visa interview appointment typically runs several weeks. *Id.* (quoting Nat'l Visa Center, *NVC's Role in Your Immigrant Visa Journey* (Nov. 2016), https://travel.state.gov/content/dam/visas/PDF-other/NVC_role_in_IVs_for_applicants_November_2016.pdf). Plaintiff Raza continues to wait

for a visa interview and subsequent adjudication.  *Id.* at 7 (Compl. ¶ 23).  And, as of August 2023, plaintiff Raza will wait longer.

### *Plaintiff Raza's Priority Date and Retrogression*

Effective August 2023, the cut-off date for plaintiff Raza's F2A eligibility category "retrogressed" to October 8, 2017.  Doc. 21 at 4.  This retrogression effectively knocked plaintiff Raza out of contention for a visa because his priority date—set at August 24, 2020, when USCIS approved plaintiff Fareed's petition—now falls later than the cut-off date.  *Id.* at 3–4.  A priority date determines whether an applicant's visa is "current."  *Id.* at 3.  A current priority date means that a visa is available to that applicant because the applicant's priority date precedes the cut-off date.  *Id.*  When plaintiffs filed their Complaint in this action, plaintiff Raza's priority date was current.  Doc. 2 at 7 (Compl. ¶ 22); Doc. 21 at 3.  Indeed, plaintiff Raza's priority date remained current for three years, from August 2020 to July 31, 2023.  Doc. 21 at 3.  But now, as of the August 2023 retrogression, plaintiff Raza's application no longer is current.

### *Retrogression and Defendants' Motions to Dismiss*

Before this retrogression, defendants filed their first Motion to Dismiss (Doc. 13), arguing that plaintiffs lacked standing for five defendants, who the court should dismiss under Fed. R. Civ. P. 12(b)(1), and also that the plaintiffs failed to state a claim under Fed. R. Civ. P. 12(b)(6).  After the retrogression, defendants filed their Second Motion to Dismiss (Doc. 18), based on plaintiff Raza's changed circumstances, arguing that the court now lacks subject matter jurisdiction for all defendants because plaintiff Raza's visa application no longer is current. Defendants thus ask the court to dismiss all defendants under Fed. R. Civ. P. 12(b)(1).

To evaluate these motions, the court begins with the Rule 12(b)(1) motions because a "legion" of cases conclude "that the district court should consider the Rule 12(b)(1) challenge

6

first[.]"  5B Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1350 (3d ed. 2023).  The court recites the legal standard for a Rule 12(b)(1) motion, below.

**II.     Rule 12(b)(1) Motion**

Fed. R. Civ. P. 12(b)(1) allows a defendant to move to dismiss for lack of subject matter jurisdiction.  Rule 12(b)(1) motions take one of two forms:  a facial attack or a factual attack.  *Stuart*, 271 F.3d at 1225.  "A facial attack asserts that the allegations in the complaint, even if true, are insufficient to establish subject matter jurisdiction.  By contrast, a factual attack on the complaint challenges the veracity of the allegations upon which subject matter jurisdiction depends."  *Cnty. Comm'rs v. U.S. Dep't of the Interior*, 614 F. Supp. 3d 944, 951 (D.N.M. 2022) (citation and internal quotation marks omitted).  A factual attack allows the court to "reference . . . evidence outside the pleadings" including "affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts."  *Stuart*, 271 F.3d at 1225 (citation and internal qutotation marks omitted).  When "the parties do not have any relevant factual disputes . . . and rather disagree about what the law governs," a court may "construe Defendant's arguments as a facial attack[.]"  *Navajo Agric. Prods. Indus. v. United States*, 608 F. Supp. 3d 1060, 1065 n.2 (D.N.M. 2022).

Here, neither Rule 12(b)(1) motion identifies whether its making a facial or factual attack, but both motions acknowledge that facial and factual attacks exist.  Doc. 14 at 6; Doc. 19 at 5–6.  So, the court must construe them as either facial or factual.  The court concludes that both motions bring facial attacks, and now it explains why.

The first 12(b)(1) motion, presented by the first Motion to Dismiss (Doc. 13), accepts the Complaint's allegations as true but challenges whether plaintiffs sued the right parties.  Five defendants either have completed their role or never played a role in processing plaintiff Raza's application.  Doc. 14 at 7.  Plaintiffs, in their response brief, agree with defendants' first 12(b)(1)

7

motion and invite the court to dismiss those five defendants.  Doc. 15 at 3.  Such universal agreement suggests that no "relevant factual disputes" exist between the parties about this first motion.  *Navajo Agric. Prod.*, 608 F. Supp. 3d at 1065 n.2.

The second 12(b)(1) motion, presented by the Second Motion to Dismiss (Doc. 18), rests on the retrogressed cut-off date for plaintiff Raza's visa category—a fact plaintiffs didn't include in their Complaint's allegations for the obvious reason that the retrogression hadn't happened yet.  While this new information directly challenges the Complaint's allegations that plaintiff Raza's visa is "current," Doc. 2 at 7 (Compl. ¶ 22), plaintiffs don't dispute its veracity.  Indeed, plaintiffs acknowledge the retrogressed cut-off date and the changed factual circumstances.  Doc. 21 at 4.  Plaintiffs instead dispute whether this new fact eliminates standing and removes the court's subject matter jurisdiction over all defendants.  *Id.* at 5–7.  So, there are no "relevant factual disputes" about the second 12(b)(1) motion, either.  The court thus construes both Rule 12(b)(1) motions as facial attacks and will decide both of them by referring to the pleadings alone.[1]  To evaluate the arguments presented under these Rule 12(b)(1) motions, the court next recites the legal standard for standing.

**III.   Standing**

The Constitution limits federal courts' "judicial Power" to "Cases" and "Controversies."  U.S. Const. art. III, § 2.  "If a dispute is not a proper case or controversy, the courts have no business deciding it, or expounding the law in the course of doing so."  *DaimlerChrysler Corp. v.*

---

[1]   Also, defendants didn't submit any affidavits or other documents outside the pleadings, lending more support to the court's conclusion that both motions bring facial attacks.  Plaintiffs did attach an affidavit (Doc. 21-1) to their Brief in Opposition of Defendants' Second Motion to Dismiss (Doc. 21), which could suggest a response to a factual attack.  But this affidavit, provided by a non-party son of plaintiff Fareed, only confirms plaintiff Fareed's illness and associated difficulties.  But defendants never dispute plaintiff Fareed's physical suffering and resulting challenges.  So, the court needn't reference the affidavit to resolve any "disputed jurisdictional facts."  *Stuart*, 271 F.3d at 1225.

*Cuno*, 547 U.S. 332, 341 (2006).  This "'constitutional limitation of federal-court jurisdiction to actual cases and controversies'" is "'fundamental to the judiciary's proper role in our system of government'"—indeed, "'[n]o principle is more fundamental.'"  *Id.* (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)).  "'One element of the case-or-controversy requirement' is that plaintiffs 'must establish that they have standing to sue.'"  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (quoting *Raines*, 521 U.S. at 818).  "The law of Article III standing, which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp the powers of the political branches."  *Id.* (citations omitted).

A plaintiff must establish three elements for standing:  the plaintiff must have (1) "suffered an 'injury in fact,'" (2) that is "'fairly traceable'" to the challenged conduct of the defendant, "not the result of the independent action of some third party," and (3) "it must be likely, not merely speculative, that a favorable judgment will redress the plaintiff's injury."  *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1154 (10th Cir. 2005) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).  "As the party seeking to invoke federal jurisdiction, the plaintiff . . . has the burden of establishing each of these three elements of Article III standing."  *Id.*  The court evaluates plaintiffs' standing here by addressing each standing element in turn, below.

A. **Injury in Fact**

To satisfy the first standing element—injury in fact—a plaintiff must show an injury "that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560).  "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'"  *Id.* (quoting *Lujan*, 504 U.S. at 560 n.1).  "A 'concrete' injury must be 'de facto'; that is, it must actually exist."  *Id.* (citation omitted).  "'Concrete' is not, however, necessarily synonymous with

9

'tangible.' Although tangible injuries are perhaps easier to recognize, [the Supreme Court] ha[s] confirmed in many of [its] previous cases that intangible injuries can nevertheless be concrete." *Id.* Finally, the Supreme Court has held that "a person's interest in being united with his relatives is sufficiently concrete and particularized to form the basis of an Article III injury in fact." *Trump v. Hawaii*, 138 S. Ct. 2392, 2416 (2018).

Here, plaintiff Fareed identifies his injury as the suffering he has endured "while waiting for a decision in his son's immigrant visa case[,]" while living "in poor health." Doc. 2 at 6 (Compl. ¶ 17). In a later brief, plaintiff Fareed clarifies this injury, asserting that he can't attend doctor's appointments and communicate with his physicians without family support, and so he suffers without the aid of his son. Doc. 21 at 5. Plaintiff Raza, for his part, explains that he is unable "to move forward with his life while waiting for a decision," and is unable "to marry without his wait to come to the US being pushed back roughly ten years." *Id.* at 6.

Here, plaintiffs' alleged injuries are personal and individual, meeting the particularized prong of injury in fact. *Spokeo*, 578 U.S. at 330. These injuries affect plaintiffs' daily lives and their future plans, touching upon deeply personal decisions about family and marriage. The alleged injuries also qualify as concrete. *Id.* Plaintiff Fareed suffers neglect of his tangible medical and language-assistance needs, and likely also suffers intangibly, longing for the comfort of his son's presence while he is ill. Plaintiff Raza likewise suffers intangibly, harboring a desire for certainty and the ability to move forward with his life. This court agrees with its sister district court, which concluded: "It is indisputable that delays in processing immigrant visa applications—and immediate-family visa applications in particular—inflict pain on the applicants and their loved ones." *Mueller v. Blinken*, No. 4:23-CV-24, 2023 WL 4759245, at *7 (E.D. Va. July 17, 2023). And, lest any question remain, the Supreme Court has held that a

10

person's interest in union with relatives confers sufficient injury in fact to establish standing. *Trump v. Hawaii*, 138 S. Ct. at 2416. So, the court concludes that plaintiffs have met the first element of standing.

### B.   Causation

To satisfy the second standing element—causation—a plaintiff's injury must be "'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'" *Nova Health Sys.*, 416 F.3d at 1156 (quoting *Lujan*, 504 U.S. at 560). That is, Article III requires "proof of a substantial likelihood that the defendant's conduct caused plaintiff's injury in fact." *Id.*

Below, the court addresses the causation requirement for the DHS defendants and General Garland. The court then evaluates the causation requirement for the State Department defendants. But, as an initial matter, the court outlines the relevant procedure for granting immigrant status. It does so because causation in this case turns, in part, on which departments or agencies are responsible for certain portions of the visa process. So, the court identifies the steps and corresponding responsible parties first, below.

The visa application process begins with USCIS, an agency that's part of DHS. Under the INA, a lawful permanent resident must submit a Petition for Alien Relative (Form I-130) to USCIS to secure permanent resident status for an immediate relative, including an unmarried child under 8 U.S.C. § 1153(a)(2). *See* 8 C.F.R. § 204.1(a)(1). Then the process moves to the State Department defendants:

> If USCIS approves the petition, it is forwarded to the State Department's National Visa Center, and the foreign national is notified to go to the local U.S. consulate in [his] country to complete visa processing, which includes submitting a Form DS-260 visa application and appearing for an interview with a consular officer.

11

*Nusrat v. Blinken*, No. CV 21-2801, 2022 WL 4103860, at *1 (D.D.C. Sept. 8, 2022) (citations, quotation marks, and brackets omitted). "The State Department alone is responsible for approving applications for interviews, which are then conducted by the U.S. embassy . . . . [T]he consular officer—and not anyone from DHS—[renders] a decision on [the] visa application." *Whitlock v. U.S. Dep't of Homeland Sec.*, No. 21-CV-807, 2022 WL 424983, at *3 (D.D.C. Feb. 11, 2022) (citations omitted). So, if an individual has submitted a DS-260 and awaits an interview, his application has moved beyond the province of DHS and USCIS, and into the realm of the State Department defendants (and its relevant consular officer). Finally, the Attorney General is not responsible for adjudicating visa applications at any point in the process, nor can he "take any action to expedite its processing." *Ayno v. Blinken*, No. 21-CV-0729, 2022 WL 4598513, at *2 (D.D.C. Sept. 30, 2022).

With these various roles and responsible parties in view, the court now evaluates plaintiffs' standing to sue the four DHS defendants and Garland under the first Motion to Dismiss (Doc. 13).

### 1. Defendants' First Motion to Dismiss

In their first Motion to Dismiss (Doc. 13), defendants contend that the DHS defendants have fulfilled their role in plaintiff Fareed's Petition for Alien Relative because USCIS has approved this petition. Doc. 14 at 7. Defendants argue that "[n]o facts are alleged demonstrating that . . . the DHS Defendants remain the cause of an actionable delay[.]" *Id.* Plaintiffs filed a DS-260 in September 2020. Doc. 2 at 6 (Compl. ¶ 19). Plaintiff Raza received notice from NVC that he became "documentarily qualified" on April 7, 2021, and now awaits an interview with a consular officer. *Id.* at 6–7 (Compl. ¶ 20). Because plaintiff Raza's visa application is "documentarily qualified," the next step is an interview at the United States Embassy in Pakistan. *Id.* But the DHS defendants don't control the scheduling of that interview. Doc. 14 at 7; Doc.

15 at 6. Instead, the State Department defendants must schedule the interview. So, plaintiffs cannot trace their injuries—ones allegedly resulting from the delay in receiving a consulate interview and adjudication of plaintiff Raza's application—fairly to the DHS defendants' conduct. Nor can plaintiffs prove a "substantial likelihood" that the DHS defendants' "conduct caused plaintiff's injury in fact." *Nova Health Sys.*, 416 F.3d at 1156. So, plaintiffs lack standing to sue the DHS defendants.

Indeed, plaintiffs "agree with this analysis and have no issue with the dismissal of Defendants DHS, the Secretary of Homeland Security, USCIS, and the Director of USCIS." Doc. 15 at 3. The court thus dismisses the four DHS defendants,[2] holding that plaintiffs lack standing under the causation prong to bring suit against these defendants.

Similarly, defendants assert that "this Court should join the many others that have dismissed 'unreasonable delay' claims against the Attorney General for lack of standing."[3] Doc.

---

[2]  In their Brief in Support of Defendants' [First] Motion to Dismiss (Doc. 14), defendants recited a multitude of recent D.C. district court cases that similarly dismissed "unreasonable delay" claims brought against DHS defendants for lack of standing. Doc. 14 at 8. Here's a smattering: *Ayno v. Blinken*, No. 21-CV-0729, 2022 WL 4598513, at *2 (D.D.C. Sept. 30, 2022) ("USCIS and its parent component DHS have adjudicated [plaintiff's] wife's application. They no longer have a role to play; because [plaintiff's] injuries can neither be traced from DHS or USCIS officials nor redressed by them, [plaintiff] lacks the standing to sue them.") (citations omitted); *Whitlock v. U.S. Dep't of Homeland Sec.*, No. 21-CV-807, 2022 WL 424983, at *4 (D.D.C. Feb. 11, 2022) ("Even assuming that [plaintiff] suffered an injury-in-fact from a failure to act on . . . [the] immigrant visa application, this injury is not fairly traceable to DHS. DHS completed its role in processing [the] application eighteen months ago. Thus, any injury suffered by [plaintiff] cannot be attributed to these defendants-respondents.") (citations and quotation marks omitted); *Tekle v. Blinken*, No. 21-CV-1655, 2022 WL 1288437, at *2 (D.D.C. Apr. 29, 2022) ("USCIS and DHS, however, have completed their portions of Plaintiff's family's visa-application review by approving his wife and son's initial applications and thus no longer have any role in visa processing. . . . Because Plaintiff's injuries cannot be traced to any of these agencies, Plaintiff lacks standing as to them.").

[3]  Again, defendants provide the court with a litany of recent D.C. district court cases that have dismissed "unreasonable delay" claims against the Attorney General for lack of standing. Some include: *Logan v. Blinken*, No. CV 21-2275, 2022 WL 3715798, at *3 (D.D.C. Aug. 29, 2022) ("As for Attorney General Merrick Garland and FBI Director Christopher Wray, [plaintiff] has failed to allege any plausible role the two have played in processing [plaintiff]'s visa application. . . . Plaintiff's claims against these four defendants must therefore be dismissed for lack of standing under Rule 12(b)(1)[.]"); *Varghese v. Blinken*, No. 21-CV-2597, 2022 WL 3016741, at *3 (D.D.C. July 29, 2022) ("The Court agrees that

14 at 8.  Defendants explain that plaintiffs have alleged "no facts *at all* relating to [the Attorney General], much less facts showing that the Attorney General controls the interview and approval process after a visa application moves from USCIS to the NVC to a consular officer."  *Id.*  Plaintiffs' response to the motion, "agree[s] to dismiss the United States Attorney General, Merrick Garland, from this suit."  Doc. 15 at 3.  Given that the Attorney General neither can adjudicate visa applications nor expedite the process, the court dismisses defendant Garland because plaintiffs can't trace their injuries to any action of the Attorney General.  So, plaintiffs lack standing to sue the Attorney General.

These dismissals leave just two State Department defendants in the suit.  The court considers next whether plaintiffs meet the causation requirement of standing for these two remaining defendants.

### 2. Defendants' Second Motion to Dismiss—the Remaining Two Defendants

In contrast to the five defendants dismissed above, the remaining State Department defendants are appropriate defendants at this stage in plaintiff Raza's visa application process because "the State Department alone is responsible for approving applications for interviews[.]"

---

United States Attorney General Merrick Garland and Federal Bureau of Investigation ('FBI') Director Christopher Wray must be dismissed because the Court lacks jurisdiction over the claims against them.  The Court reads the government's argument on this point to go to [plaintiff's] standing to bring suit, which is an essential element of this Court's jurisdiction."); *Nusrat v. Blinken*, No. CV 21-2801, 2022 WL 4103860, at *4 (D.D.C. Sept. 8, 2022) ("The complaint does not allege any facts suggesting that the disputed delay here is traceable to the Attorney General's actions or that the Attorney General plays any role in adjudicating visa applications.") (emphasis omitted).

*Whitlock*, 2022 WL 424983, at *3. But defendants nonetheless contest plaintiffs' ability to establish the causation prong of standing to sue these remaining two defendants as well.

In the Second Motion to Dismiss (Doc. 18), defendants argue that "the lack of available visa numbers means that the *current* cause of this alleged harm is not an unreasonable delay by the Department [but] a Congressional decision to limit the number of F2A [family-based immigration] visas, resulting in a retrogressed cut-off date when demand for such visas exceeds supply." Doc. 22 at 3 (emphasis added). That is, the State Department defendants implement cut-off date controls, including retrogression, to comply with the limit determined by Congress. Doc. 19 at 2. So, plaintiffs' alleged injuries result from the independent action of some third party not before the court—Congress.

Defendants are right. The court may trace the *current* cause of plaintiffs' alleged harm to a Congressional decision. But the operative language when conducting a causation analysis isn't phrased in the present tense—as defendants' emphasis on *current* cause suggests. It's phrased in the past tense. Recall that establishing causation requires "proof of a substantial likelihood that the defendant's conduct *caused* plaintiff's injury in fact." *Nova Health Sys.*, 416 F.3d at 1156 (emphasis added). When contesting the causation requirement, defendants neglect to account for the nearly three years—from September 2020 to August 2023—when plaintiff Raza could have secured a visa, had defendants adjudicated his pending application. Doc. 2 at 6 (Compl. ¶ 19); Doc. 21 at 5. As plaintiffs correctly note, plaintiffs Fareed and Raza's alleged injuries are "fairly traceable" to the State Department and Secretary of State's failure to adjudicate plaintiff Raza's application during that three-year span, before the cut-off date retrogressed. Doc. 21 at 5. The court thus rejects defendants' lack of causation argument and holds that plaintiffs have established the causation prong of standing to sue the State Department defendants.

The court now moves to the final element of standing—redressability—and evaluates plaintiffs' standing to sue the State Department defendants under this third prong.

## C.  Redressability

The third standing element requires a plaintiff to establish that a district court can redress his alleged injuries. *Nova Health Sys.*, 416 F.3d at 1154.  In a case like this one, a plaintiff cannot establish redressability if a district court's action will "not affect" the outcome of a visa decision.  *Akopyan v. Barr*, 786 F. App'x 829, 832 (10th Cir. 2019).  Redressability turns on the characterization of the injury.  *See Petrella v. Brownback*, 697 F.3d 1285, 1294 (10th Cir. 2012) ("The district court's conclusion that Appellants' alleged injury was not redressable was based on an inaccurate characterization of that injury.")

To satisfy this third standing element, a plaintiff must establish that "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* (citation and internal quotation marks omitted).  Another district court expounded upon this likely-versus-speculative characteristic of redressability in the immigrant visa interview context: "As to redressability, [plaintiffs] need not show that their concrete interest—receiving a diversity visa—will be achieved by a favorable court ruling, only that a favorable court ruling could still change the substantive outcome, namely, by granting plaintiffs an interview which could lead to a visa."  *Babamuradova v. Blinken*, 633 F. Supp. 3d 1, 10 (D.D.C. 2022) (quotation cleaned up). And if a plaintiff's requested relief would require the court "to order USCIS or DOS to take actions contrary to the governing statutes," then that plaintiff "cannot meet the standing requirement of redressability" because it's "beyond the power" of the court to order such contrary actions.  *Museboyina v. Jaddou*, No. 4:22CV3169, 2023 WL 1438666, at *8 (D. Neb. Feb. 1, 2023) (citations omitted).

16

For example, in *Museboyina*, a citizen of India brought suit for unreasonable delays in adjudication of his immigration status. *Id.* at *1. The priority date for applicants in plaintiff's preference category retrogressed. *Id.* at *2. The court then dismissed plaintiff's claims for lack of standing and mootness, explaining the court couldn't redress plaintiff's injuries because "[w]hat plaintiff asks the Court to do is precisely what the standing requirement is designed to prevent, that is, using the judicial process to usurp the powers of the political branches." *Id.* at *8 (citations and internal quotation marks omitted).

The Seventh Circuit addressed a similar set of facts when an Irish citizen sought immediate adjudication of his visa application, despite the visa's unavailability because of a statutory cap. *Taylor v. McCament*, 875 F.3d 849 (7th Cir. 2017). That Circuit decided the case on redressability, noting that "a plaintiff loses standing . . . if the relevant agency loses statutory authority to award the relief sought." *Id.* at 854 (citation omitted).

Here, plaintiffs characterize their injuries to include plaintiff Fareed's suffering absent his son's aid, and plaintiff Raza's inability to make life decisions while waiting in limbo for a visa decision. Doc. 2 at 6 (Compl. ¶ 17); Doc. 21 at 5–6. While plaintiff Raza could escape his limbo regardless of visa approval or denial, plaintiff Fareed will experience relief only with his son's presence in the United States. So, redressing plaintiff Fareed's injury requires at least the possibility of plaintiff Raza's visa approval. Redressability doesn't require certainty that plaintiff Raza will achieve his "concrete interest"—a visa. *Babamuradova*, 633 F. Supp. 3d at 10. But where the situation, regardless of court action, definitively precludes the possibility of approval, plaintiff Fareed cannot secure relief. So, the court can't redress plaintiff Fareed's alleged injuries unless the court can provide a remedy that, at least potentially, will "change the

substantive outcome" by granting plaintiff Raza "an interview which could lead to a visa." *Id.* (citation and internal quotation marks omitted).

But here, even if the court assumes authority to compel agency action[4] and thus secures plaintiff Raza an interview—and to be clear, the court doesn't decide here that it could issue such a directive—that interview couldn't lead to a visa. The State Department defendants cannot issue a visa in excess of Congressional limitations. Nor can they issue visas out-of-order. A statute governs how the State Department allocates immigrant visas and requires that family-sponsored immigrant visas "shall be issued to eligible immigrants in the order in which a petition in behalf of each such immigrant is filed[.]" 8 U.S.C. § 1153(e)(1). Plaintiff Raza's priority date

---

[4] This is a bold assumption. Many courts recently have rejected the idea that they could compel adjudication of visa applications because such compulsion, under either the APA, 5 U.S.C. § 706(1), or a mandamus action, requires establishing an agency's mandatory duty, not a discretionary one. And adjudication of a visa application is discretionary. *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (holding that "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take") (emphasis omitted); *Mueller v. Blinken*, No. 4:23-CV-24, 2023 WL 4759245, at *5 (E.D. Va. July 17, 2023) (dismissing plaintiffs' action to compel visa application interviews at the US Embassy in Nairobi because plaintiffs had "not identified any 'discrete agency action' that the Department of State [was] required to take, so their APA claim" failed); *Farooq v. Blinken*, No. 22-CV-0828, 2023 WL 5658357, at *3 (C.D. Cal. Aug. 11, 2023) (holding plaintiffs failed to state a claim because any duty to adjudicate plaintiff's visa application "attaches only after her application is complete—*i.e.*, after she has appeared before a consular officer"); *Cheejati v. Blinken*, No. 4:23-CV-600, 2023 WL 4303638, at *5 (E.D. Tex. June 30, 2023) (deciding plaintiffs had "not established that there is any 'unequivocal command' in federal law for DOS and USCIS to adjudicate their green-card applications by a particular date or to adjudicate those applications without regard to the current availability of visas").

There are older cases, however, where courts found unreasonable delay in processing visa applications, though those courts did not address the mandatory duty issue, and the delays were years longer than the one at issue here. *See AlShamsawi v. Holder*, No. 2:10-CV-194, 2011 WL 1832938, at *4 (D. Utah May 13, 2011) (finding unreasonable a delay of more than six years and ordering USCIS to adjudicate the plaintiff's application within 30 days); *Al Karim v. Holder*, No. 08-CV-00671, 2010 WL 1254840, at *5 (D. Colo. Mar. 29, 2010) (finding unreasonable a delay of eight years and ordering USCIS to adjudicate plaintiff's application within 30 days).

falls after the cut-off date, and securing him a visa now would leap-frog him over others in line. *See* Doc. 21 at 4.

So, even if the court compelled an interview, the State Department defendants couldn't approve plaintiff Raza's visa because they have lost authority under the statutory scheme for visa allocation "to award the relief sought." *Taylor*, 875 F.3d at 854. The court cannot reach beyond its power and order the State Department defendants "to take actions contrary to the governing statutes." *Museboyina*, 2023 WL 1438666 at *8. Nor should it, as the standing doctrines exist precisely to prevent the judiciary from making any such attempt to "usurp the powers of the political branches." *Clapper*, 568 U.S. at 408. Plaintiffs thus lack standing because they have failed to establish redressability for the State Department defendants. The court dismisses plaintiffs' claims against all remaining defendants for lack of standing under Rule 12(b)(1), and thus dismisses the case for lack of jurisdiction.

## IV.    Conclusion

The court grants in part defendants' first Motion to Dismiss (Doc. 13), holding that plaintiffs failed to establish standing to sue five defendants: DHS, Alejandro Mayorkas as Secretary of DHS, USCIS, Ur Jaddou as USCIS Director, and Merrick Garland as Attorney General. The court dismisses these five defendants under Rule 12(b)(1) because, without standing, the court lacks subject matter jurisdiction over these defendants. The court denies in part defendants' first Motion to Dismiss as moot because the court needn't reach defendants' Rule 12(b)(6) "unreasonable delay" arguments.

The court grants defendants' Second Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. 18), holding that plaintiffs failed to establish standing to sue the remaining two defendants: the United States Department of State and Antony Blinken, Secretary of State. The court dismisses these remaining two defendants under Rule 12(b)(1) because, without standing,

the court lacks subject matter jurisdiction over these defendants.  The court thus dismisses this case, without prejudice.  *Bruzga v. Cnty. of Boulder*, 795 F. App'x 599, 604–05 (10th Cir. 2020) (holding that "because the dismissal was for lack of standing it should have been without prejudice").

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' first Motion to Dismiss (Doc. 13) is granted in part and denied in part.  Defendants United States Department of Homeland Security; Alejandro Mayorkas, Secretary of Homeland Security; United States Citizenship and Immigration Services; Ur Jaddou, USCIS Director; and Merrick Garland, United States Attorney General are dismissed under Rule 12(b)(1).  The defendants' Rule 12(b)(6) arguments are denied as moot.

**IT IS FURTHER ORDERED THAT** defendants' Second Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. 18) is granted.  Defendants United States Department of State and Antony Blinken, Secretary of State are dismissed under Rule 12(b)(1).

These rulings dispose of all claims asserted in the case and the court thus directs the Clerk to enter a Judgment consistent with this Order and close the case.

**IT IS SO ORDERED.**

**Dated this 12th day of December, 2023, at Kansas City, Kansas.**

                                              **s/ Daniel D. Crabtree**
                                              **Daniel D. Crabtree**
                                              **United States District Judge**